IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:16-CV-227-FL(2)

| | | |
|---|---|---|
| JUDY L. HARRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM &** |
| | ) | **RECOMMENDATION** |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Judy L. Harrison ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE #19] be granted, Defendant's

---

[1] Plaintiff's complaint names Carolyn W. Colvin in her official capacity as Acting Commissioner of Social Security as a defendant to this action. Nancy A. Berryhill is now the Acting Commissioner of Social Security and therefore is substituted as a defendant to this action. *See* Fed. R. Civ. P. 25(d).

Motion for Judgment on the Pleadings [DE #21] be denied, and the Commissioner's decision be remanded for further proceedings.

## STATEMENT OF THE CASE

Plaintiff protectively applied for a period of disability and DIB on June 12, 2013, with an alleged onset date of March 11, 2013. (R. 15, 69.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 15, 69, 101, 117–20.) On April 27, 2015, a hearing was held before Administrative Law Judge ("ALJ") Gary Brockington, who issued an unfavorable ruling on May 29, 2015. (R. 15, 29.) The Appeals Council denied Plaintiff's request for review on June 16, 2016. (R. 1.) Plaintiff seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court

should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.*

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since March 11, 2013, the alleged onset date. (R. 17.) Next, the ALJ determined Plaintiff had the following severe impairments: "bipolar disorder; depression; anxiety disorder, including panic attacks; and obesity." (*Id.*) The ALJ identified gastroesophageal reflux disease (GERD), sleep apnea, hypertension, vertebral degenerative changes, and gallbladder removal as non-severe impairments. (R. 17–18.)

At step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18.) The ALJ analyzed Listings 12.04 and 12.06. (R. 18–20.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had

> the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with the following limitations: no exposure to unprotected heights, hazardous machinery or moving mechanical parts. [Plaintiff]'s work is limited to simple, routine and repetitive tasks but not at a production rate pace; simple work-related decisions; few, if any, changes in the routine work setting; little, if any, interaction with the public; and occasional interaction with co-workers and supervisors. [Plaintiff] would be off task no more than 10% of the time in an 8-hour workday, in addition to normal breaks (where normal breaks defined as a 10-15 minute morning and afternoon break and a 30-60 minute lunch break).

(R. 20.) In making this assessment, the ALJ found Plaintiff's statements regarding the severity of her symptoms "not entirely credible." (R. 22.) At step four, the ALJ concluded Plaintiff was not able to perform her past relevant work as a production supervisor. (R. 27.) At step five, the ALJ concluded, based on Plaintiff's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.*) Specifically, the ALJ found Plaintiff capable of performing work as a sweeper cleaner, kitchen helper, or laundry laborer. (R. 28.)

## IV. Plaintiff's Argument

Plaintiff contends that the ALJ erred by failing to assign the proper weight to Plaintiff's treating physician and that this error infected both the listing and RFC analyses. The undersigned finds merit in this argument and, therefore, recommends that the matter be remanded to the Commissioner.

An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." SSR 96–5p, 1996 WL 374183, at *3 (July 2, 1996).[2] An ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996).

---

[2] This ruling was rescinded on March 27, 2017, for claims filed on or after that date. 82 Fed. Reg. 15263 (Mar. 27, 2017).

5

As part of this consideration and explanation, an ALJ must evaluate all medical opinions in the record. 20 C.F.R § 404.1527(b)–(c). Medical opinions are statements from physicians or other "acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

A treating source is a "physician, psychologist, or other acceptable medical source who provides . . . or has provided [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502 (effective June 13, 2011 to Mar. 26, 2017). Controlling weight will be given to "a treating source's medical opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) [if it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *Craig,* 76 F.3d at 590.

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then determine the weight to be given the opinion by applying the following factors: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the physician is a specialist in the

field in which the opinion is rendered; and (6) any other relevant factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c)(2)–(6); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011). "The ALJ is not required to discuss all of these factors." *Ware v. Astrue,* No. 5:11-CV-446-D, 2012 WL 6645000, at *2 (E.D.N.C. Dec. 20, 2012) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), and *Munson v. Astrue*, No. 5:08-CV-110-D(3), 2008 WL 5190490, at *3 (E.D.N.C. Dec. 8, 2008)). "However, the ALJ must give 'good reasons' for the weight assigned to a treating source's opinion." *Ware*, 2012 WL 6645000, at *2 (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)).

Here, the medical evidence of record shows that Dr. Louis Gagliano is a psychiatrist at Wayne Psychiatric Associates who treated Plaintiff from March 2006 through January 2015. (R. 375, 491, 513.) Treatment notes in the record indicate that Plaintiff initially saw a licensed clinical social worker for psychotherapy at Dr. Gagliano's practice in or before February 2006. (R. 376–77.) Dr. Gagliano's treatment notes indicate he saw Plaintiff four times from March 2006 through May 2006 (R. 374–75); nineteen times from December 2009 through December 2011 (R. 353–73); ten times from February 2012 through October 2013 (R. 455–69, 487); and twelve times from January 2014 through January 2015 (R. 513–33). There are no records from Dr. Gagliano or his practice for the years 2007, 2008, and 2009, and records appear for only half of 2013. Beginning with the oldest treatment notes in the record and continuing through the most recent treatment notes, Dr. Gagliano consistently diagnoses Plaintiff with bipolar disorder.

Additional medical evidence in the record from Duke University Medical Center shows that Plaintiff underwent thirteen sessions of electroconvulsive therapy ("ECT") in August and September 2011 for psychiatric treatment. (R. 283–351.) These physicians describe Plaintiff as experiencing "recurrent major depression of moderate to severe severity" which is "affecting her functioning and quality of life." (R. 285–86.)

The ALJ selected portions of Dr. Gagliano's treatment notes to summarize over three pages in his opinion. (R. 22–24.) The ALJ's explication, however, is sparse. Before summarizing Dr. Gagliano's notes, the ALJ states that he is discounting treatment records related to Plaintiff's "major depression, bipolar disorder, anxiety disorder, and obesity prior to 2013" because Plaintiff's "current treatment records are more relevant to the issues at hand." (R. 22.) ALJ Brockington describes Plaintiff's 2012–2015 treatment as "sporadic and conservative" notwithstanding the lengthy treatment history described above. (R. 22–23.) Then, after summarizing portions of Dr. Gagliano's notes, the ALJ states that he is assigning

> some weight to the opinions of Dr. Gagliano. The opinions are not supported with an explanation and they are not entirely consistent with the record as a whole, including Dr. Gagliano's own treatment notes that reflect no more than a moderate degree of bipolar affective disorder, as discussed herein. Of note, Dr. Gagliano indicated that the claimant had poor concentration, but [Plaintiff]'s associations were good, her fund of knowledge was good and her recent and remote memory were ok. In addition, on numerous occasions [Plaintiff] was found to be dressed neat, clean and casual with fair grooming.

(R. 24–25) (citations omitted). Aside from a section discounting Global Assessment of Functioning scores generally, the above quote represents the ALJ's entire *analysis*

*and explanation* of Dr. Gagliano's treatment notes and opinions. There are a number of problems presented here.

First, the ALJ's decision to discount, if not ignore, evidence prior to 2013 makes meaningful review impossible. Plaintiff had been receiving psychiatric treatment and medication management for bipolar disorder from Dr. Gagliano for seven years prior to 2013. There may be relevant evidence in those treatment records that shed light on Dr. Gagliano's later opinions. Indeed, the regulations state that "the more knowledge a treating source has about [a claimant's] impairments(s) the more weight [the Commissioner] will give to the source's medical opinion." 20 C.F.R. § 404.1527(c)(2)(ii). Moreover, the decision to omit discussion of pre-2013 medical evidence casts doubt on the ALJ's characterization of Plaintiff's post-2013 treatment as "sporadic and conservative." (*See* R. 22–23.) The medical evidence of record establishes that Plaintiff had been receiving psychiatric treatment and medication management from Dr. Gagliano since 2006 and elected to undergo electroconvulsive therapy at Duke University Medical Center in 2011 because antidepressants were not successfully controlling her symptoms.

Second, the ALJ did not discuss any factor in 20 C.F.R. § 404.1527(c)(2)–(6) that supported Plaintiff's position. This is problematic because several factors appear to weigh in Plaintiff's favor. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (quoting *Denton v. Astrue*, 596 F.3d 419,

425 (7th Cir. 2010)). Here, Plaintiff saw the same physician for approximately nine years; the treatment notes, when present, indicate that she saw him on a monthly-to-quarterly basis; and Plaintiff's physician is a psychiatrist, a specialist in the medical field relevant to Plaintiff's alleged disability.

Third, the ALJ failed to provide "good reasons" for not assigning controlling weight to Dr. Gagliano's opinions. It is unclear what "not entirely consistent" in the ALJ's brief analysis means because he does not elaborate on what he takes to be specific inconsistencies within Dr. Gagliano's treatment notes and opinions. For example, it is unclear what is inconsistent about a patient suffering from concentration problems, but nonetheless being able to recall certain pieces of knowledge and past events. On review, the Commissioner's argument fares no better as she simply repeats what the ALJ summarized and asserts that the summarized "treatment notes are inconsistent with the functional limitations opined by Dr. Gagliano."[3] (Def.'s Mem. Supp. Mot. J. Pldgs. [DE #22] at 12.) Moreover, the nexus between (i) bipolar disorder and the disabling symptoms of which Plaintiff complains, and (ii) Plaintiff's acceptable grooming, which is repeatedly referenced by the ALJ, is also unclear and unexplained. *See Lewis*, 858 F.3d at 869 (critiquing an ALJ for failing to explain how one apparently normal ability of a claimant "[bore] any nexus" to the claimant's allegedly disabling symptoms).

---

[3] The undersigned is mindful that the Commissioner cannot engage in post-hoc rationalization of the ALJ's opinion. *See Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988). But explication of an ALJ's reasoning is permitted and encouraged.

The Commissioner argues that "substantial evidence supports the ALJ's finding to give some weight to [Dr. Gagliano's] opinions because the opinions were not supported with an explanation." (Def.'s Mem. Supp. Mot. J. Pldgs. at 12.) And the Commissioner aptly cites to the regulations for the proposition that more weight will be assigned to a more thoroughly explained medical opinion than to a less thoroughly explained opinion. (*Id.* (citing 20 C.F.R. § 404.1527(c)(3).) The lack of explanation in Dr. Gagliano's medical source statement from June 2014 is undeniably a reason to discount its evidentiary weight.

Nevertheless, the ALJ does not explain what he means by "some weight," and also fails to explain adequately his own opinion. As the Fourth Circuit has recently held, an ALJ must "show [his] work." *Patterson v. Comm'r of Social Security Admin.*, 846 F.3d 656, 663 (4th Cir. 2017). Here, it appears that neither Dr. Gagliano nor ALJ Brockington complied with that "grade-school" maxim referenced in *Patterson*, 846 F.3d at 663.

It is this court's duty to review the ALJ's opinion to determine whether the correct legal standards were applied and the Commissioner's decision is supported by substantial evidence, not to independently assess the medical evidence or the ALJ's credibility determinations. Here, however, the ALJ's failure to consider the longitudinal medical evidence or to explain, other than perfunctorily, the reasoning behind the weight assigned to a treating physician's opinions precludes the court from determining whether the Commissioner's decision is supported by substantial

evidence. Therefore, the undersigned recommends that the matter be remanded to the Commissioner for further proceedings.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE #19] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #21] be DENIED, and the Commissioner's decision be remanded for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 21, 2017**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's

failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 7th day of August 2017.

KIMBERLY A. SWANK
United States Magistrate Judge